1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| KULWANT LASHER, USA EXPRESS CAB LLC, | ) ) ) | Case No.: 5:10-cv-04173-LHK |
| Plaintiffs, | ) ) | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | ) ) | |
| CITY OF SANTA CLARA, | ) ) | |
| Defendant. | ) ) ) | |
| | ) | |

Plaintiff Kulwant Lasher ("Plaintiff") and his taxicab company, USA Express Cab, LLC, bring this action seeking damages against the City of Santa Clara ("Defendant" or the "City") pursuant to 42 U.S.C. § 1983.[1]  Plaintiff alleges that the City permanently revoked his license to operate a taxicab business without affording him due process, thereby violating his 14th Amendment rights.  Before the Court is the City's motion for summary judgment, on which the Court held a hearing on January 19, 2012.  Having considered the parties' submissions and

---

[1] Although both Kulwant Lasher and his taxicab company, USA Express Cab LLC, are plaintiffs in this action, for ease of reading, the Court will use "Plaintiff" to refer only to Mr. Lasher in this Order.  The Order applies to both plaintiffs.

1

1    arguments and the relevant law, and for good cause shown, the Court hereby GRANTS

2    Defendant's motion for summary judgment.

3        **I.   BACKGROUND**

4        Plaintiff is the owner and operator of USA Express Cab LLC, a taxicab company operating

5    in the City of Santa Clara (the "City").  First Am. Compl. ("FAC") ¶ 7.  The City regulates taxicab

6    companies under Santa Clara Municipal Code ("SCMC" or "Code") §5.35.010 *et seq*,[2] which

7    requires taxicab companies to comply with certain requirements in order to obtain and retain an

8    operating license.  *See* SCMC § 5.35.040(a).  One of these requirements is that a licensee must

9    maintain at least 10 permitted drivers.  Another requirement is that a licensee must have their

10   taxicabs inspected annually, and must own and maintain at least 10 taxicabs that have passed safety

11   inspections (as indicated by displaying a permit sticker in the rear window).  *See* SCMC §§

12   5.35.040(c), 5.35.050(j) and (k), 5.035.260(a).  The Code authorizes the Chief of Police, or the City

13   Manager on appeal, to suspend or revoke a taxicab operating license for violation of any of the

14   terms, conditions, or requirements of the Code, provided the licensee has been given written notice

15   and a hearing upon request.  SCMC §§ 5.35.430, 5.35.450.

16       Over the past five years, the City has sent Plaintiff several notices informing him of his

17   noncompliance with the Code.  For example, on August 9, 2007, Community Service Officer Ty

18   Oto, on behalf of the City, sent a letter to Plaintiff, notifying him that he had only nine vehicles

19   with current safety inspection stickers, rather than the required ten, and that he had only seven

20   permitted drivers.  Decl. of Ty Oto ("Oto Decl.") ¶ 4 & Ex. A.  The City advised Plaintiff that

21   failure to cure these violations within 20 days would result in suspension of his taxicab operating

22   license.  *Id.*  After more than twenty days had elapsed and Plaintiff failed to provide proof of

23   compliance, the City sent another letter on September 12, 2007, notifying him that his company's

24   license to operate in the City would be suspended for 30 days for violation of SCMC § 5.35.040(c).

25   Oto Decl. ¶ 5 & Ex. B.

26

27   ─────────────────────
     [2] Pursuant to Federal Rule of Evidence 201(b), the Court takes judicial notice of the Santa Clara
28   Municipal Code, submitted as Exhibit F to Defendant's Request for Judicial Notice ("RJN"), ECF
     No. 41.

2

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1   By July 2008, the City again determined that Plaintiff was not in compliance with the Code.

2   The City found that only three of Plaintiff's taxicabs had a valid safety inspection decal, and only

3   nine of his drivers had a valid permit.  On July 11, 2008, the City sent Plaintiff another notice, this

4   time partially recounting Plaintiff's history of noncompliance since 2004, including his most recent

5   violations, and warning him that continued failure to comply with the ordinance would result in

6   permanent revocation of his operating license. Oto Decl. ¶ 6 & Ex. C.  In light of Plaintiff's

7   history of noncompliance and previous suspensions, the City warned Plaintiff that failure to

8   comply with the Code in full by July 18, 2008 would result in permanent revocation of his

9   operating license.  *Id.*

10   When Officer Oto visited Plaintiff's place of business on July 18, 2008, he found the

11   company still not in compliance.  Oto Decl. ¶ 7 & Ex. D.  Only nine drivers possessed valid

12   permits, and not a single cab was in acceptable condition.  *Id.*  As a result, the Santa Clara Police

13   Department Permits Unit revoked USA Express Cab Company's operating license.  *Id.*  The July

14   29, 2008 notice of revocation advised Plaintiff of his right to appeal the decision by written request

15   to the City Manager within ten days.  *Id.* Ex. D.

16   Plaintiff timely appealed.  The appeal hearing was held on September 8, 2008 before City

17   Manager Jennifer Sparacino.  Also present were Plaintiff and his attorney, Rattan Dev. S.

18   Dhaliwal, and Santa Clara Police Chief Stephen D. Lodge.  Decl. of Jennifer Sparacino

19   ("Sparacino Decl.") ¶ 2 & Ex. E.  In light of Plaintiff's request to review the police department's

20   file on Plaintiff's company, the City Manager continued the hearing to September 16, 2008, "to

21   give [Plaintiff] an opportunity to review the material."  Sparacino Decl. Ex. E.

22   On September 11, Officer Oto again visited Plaintiff's place of business to inspect the cabs.

23   *Id.*  Seven cabs were inspected, and none were found to be in compliance with the City Code.  *Id.*

24   Furthermore, during this inspection, Plaintiff was arrested for violating Penal Code § 67.5(b),

25   felony bribery of a public official.  *Id.*  Plaintiff was eventually convicted on this charge. Oto Decl.

26   ¶ 8; *see* RJN Ex. G.

27   The City held the continued appeal hearing on September 16, 2008.  City Manager

28   Sparacino sent her final decision to Plaintiff on September 24.  The City, pursuant to its power

3

**United States District Court**
For the Northern District of California

1  under § 5.35.430(a), permanently revoked Plaintiff's license to operate a taxicab business in the

2  City.  In doing so, the City cited Plaintiff's continued noncompliance with the City Code,

3  Plaintiff's history of violations and previous suspensions, and Plaintiff's arrest for bribery of a

4  public official during the most recent inspection.  Sparacino Decl. Ex. E.

5  **II.  LEGAL STANDARD**

6  Summary judgment is appropriate if, viewing the evidence and drawing all reasonable

7  inferences in the light most favorable to the nonmoving party, there are no genuine issues of

8  material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

9  *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  At the summary judgment stage, the Court

10  "does not assess credibility or weigh the evidence, but simply determines whether there is a

11  genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559-60 (2006).  A fact is "material" if

12  it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*,

13  477 U.S. 242, 248 (1986), and a dispute as to a material fact is "genuine" if there is sufficient

14  evidence for a reasonable trier of fact to decide in favor of the nonmoving party, *id.*  "If the

15  evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

16  *Id.*

17  The moving party bears the initial burden of identifying those portions of the pleadings,

18  discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*

19  *Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial,

20  it must affirmatively demonstrate that no reasonable trier of fact could find other than for the

21  moving party, but on an issue for which the opposing party will have the burden of proof at trial,

22  the party moving for summary judgment need only point out "that there is an absence of evidence

23  to support the nonmoving party's case."  *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509

24  F.3d 978, 984 (9th Cir. 2007).  Once the moving party meets its initial burden, the nonmoving

25  party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that

26  there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250.

27  **III.  DISCUSSION**

28

Case No.: 5:10-CV-04173-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    Plaintiff brings the instant action for damages under § 1983 for violation of his 14th

2    Amendment right to due process.[3]  Defendant seeks summary judgment on grounds that: (1)

3    Plaintiff cannot, as a matter of law, establish a due process violation (procedural or substantive);

4    (2) because there was no constitutional violation, there can be no *Monell* liability against the City

5    of Santa Clara; and (3) Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

6    The Court addresses each of Defendant's arguments in turn.

7            **A.  Due Process**

8                    **1.        Procedural Due Process**

9            The 14th Amendment protects individuals against the deprivation of liberty or property by

10   the government without due process.  To establish a § 1983 claim based on a violation of

11   procedural due process, a plaintiff must establish (1) a protected liberty or property interest, and (2)

12   a denial of adequate procedural protection.  *Pinnacle Armor, Inc. v. U.S.*, 648 F.3d 708, 716 (9th

13   Cir. 2011).  Neither Plaintiff nor Defendant addresses whether Plaintiff has a constitutionally

14   protected property interest in his taxicab license.  Because Defendant does not argue this point, and

15   because the Court ultimately concludes that the City complied with the requirements of due

16   process, the Court will not reach the question of whether Plaintiff has a protected property interest

17   in his taxicab license.

18           The fundamental requirement of procedural due process is the opportunity to be heard "at a

19   meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)

20   (internal quotation marks and citation omitted).  To determine whether the City provided Plaintiff

21   adequate opportunity to be heard, the Court must balance: (1) the private interest that will be

22   affected by the action; (2) the risk of an erroneous deprivation of that interest through the

23   procedures used and the value of additional or alternative safeguards; and (3) the government's

24   interest, including the additional costs and administrative burdens that additional procedures would

---

[3] It is unclear from Plaintiff's Complaint whether he is alleging violation of his substantive due process or procedural due process rights.  At the hearing, Plaintiff's counsel conceded that Plaintiff's primary concern was the denial of his procedural due process rights, and was unable to articulate a theory of how Plaintiff's substantive due process rights had been violated.  Nevertheless, the Court will address both procedural and substantive due process.

5

entail. *Buckingham v. Sec'y of U.S. Dep't of Agr.*, 603 F.3d 1073, 1081-82 (9th Cir. 2010) (citing *Mathews*, 424 U.S. at 335). "At bottom, the due process evaluation 'is flexible and calls for such procedural protections as the particular situation demands.'" *Id.* at 1083 (quoting *Mathews*, 424 U.S. at 334).

First, the Court recognizes that both the City and Plaintiff have significant interests at stake in this case. Irrespective of whether Plaintiff's taxicab license is constitutionally protected property, the Court acknowledges that an individual who has built his livelihood, at least in part, on owning and operating a taxicab company has a substantial interest in maintaining his taxicab license. However, the Court also recognizes the City's substantial interest in regulating taxicab companies as a matter of public safety. Regulation of the taxicab industry is a traditional exercise of a city's police powers. *Eastman v. Yellow Cab Co.*, 173 F.2d 874, 881 (7th Cir. 1949); *U.S.A. Express Cab, LLC v. City of San Jose*, No. C-07-06171 RMW, 2007 WL 4612926, at *8 (N.D. Cal. Dec. 31, 2007); *Cotta v. City and Cnty. of S.F.*, 157 Cal. App. 4th 1550, 1560 (2007) ("Local authorities act pursuant to their police power in regulating virtually all aspects of the taxicab business, including who may operate a cab, [and] how many cabs may be operated . . . .").

With these interests in mind, the Court turns to "the fairness and reliability of the existing . . . procedures, and the probable value, if any, of additional procedural safeguards." *Mathews,* 424 U.S. at 343. Here, the record shows that both the City's procedures for revoking taxicab licenses generally, and the pre- and post-deprivation process afforded Plaintiff in particular, are fair.

Santa Clara Municipal Code §§ 5.35.430 and 5.35.450 clearly identify the circumstances and procedures by which a taxicab license can be revoked. *See* RJN Ex. F. Based on the uncontroverted evidence provided by Defendant, there is no indication that these procedures were not followed in the instant case. Plaintiff violated § 5.35.040(c) on multiple occasions by failing to maintain ten taxicabs and ten permitted drivers. *Id.* Under § 5.35.430(a), his noncompliance with the terms, conditions, and requirements of the City ordinance was a valid rationale for the revocation of his license.

Further, in accordance with SCMC § 5.35.450, Plaintiff was afforded reasonable notice of the possible revocation of his license and a meaningful opportunity to be heard both before and

6

1   after his license was revoked.  Plaintiff received multiple letters from the City informing him of his

2   violations, and he was given sufficient warning that failure to cure his violations within a specified

3   period of time would result in the possible revocation of his license.  Further, once Plaintiff's

4   license was revoked by the Chief of Police, he was informed of his right to appeal the Chief of

5   Police's decision to the City Manager within ten days, a right that he timely exercised.  *See* SCMC

6   § 5.35.450(b); Oto Decl. Ex. D.  In accordance with SCMC § 5.35.450(d), the City Manager

7   conducted an appeal hearing within 45 days of Plaintiff's request, which stayed the revocation

8   pending the outcome of the appeal hearing.  *See* SCMC § 5.35.450(e).  The appeal hearing was

9   continued, at Plaintiff's request, to allow Plaintiff and his attorney additional time to present an

10   informed defense.  At both sessions of the appeal hearing, Plaintiff was represented by counsel and

11   was given an opportunity to present evidence and arguments.  *See* SCMC § 5.35.450(f).  The City

12   Manager issued a final written decision citing multiple grounds for revoking Plaintiff's license,

13   including his continuing history of violations dating back to March 2004, two previous permit

14   suspensions, his current noncompliance with the Code, and his arrest during the most recent

15   inspection for bribery of a public official.  Sparacino Decl. Ex. E; *see* SCMC § 5.35.450(f).  The

16   record shows that Plaintiff received adequate notice and a meaningful opportunity to be heard both

17   before and after the revocation of his taxicab license.  The Constitution does not require more.

18        Plaintiff's arguments to the contrary are without merit.[4]  First, Plaintiff argues that the City

19   Manager's use of the word "permit" rather than "license" in the September 24, 2008 notice of

20   revocation somehow belies a complete failure to provide due process.  *See* Opp'n at 2.  Under the

21   City Code, a taxicab "driver's permit" is required to operate a taxicab in the City, SCMC §

---

[4] Plaintiff first argues that the Court should deny Defendant summary judgment because Defendant
submitted an unauthorized separate statement of undisputed facts in connection with its Motion, in
violation of Civil Local Rule 56-2.  Opp'n at 1-2; *see* ECF No. 37.  Rather than deny Defendant's
Motion based on its noncompliance with the Local Rules, the Court simply disregards the
unauthorized separate statement of undisputed facts.  *See Webb v. City and Cnty. of S.F.*, No. C 11-
00476 CRB, 2011 WL 6151605, at *1 n.2 (N.D. Cal. Dec. 12, 2011).  For the same reason, the
Court disregards Plaintiff's untimely and separately filed Objection to Defendant's Declarations,
ECF No. 47, which violates the requirement under the Local Rules that "[a]ny evidentiary and
procedural objections to the motion must be contained within the [opposition] brief or
memorandum."  Civil L.R. 7-3(a).

Case No.: 5:10-CV-04173-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    5.35.320, while a "taxicab license" is required to operate a taxicab business, SCMC § 5.35.040.

2    The City Manager's September 24, 2008 letter does use the word "permit" in its discussion of prior

3    suspensions and the instant revocation, but the letter cites the correct provision pertaining to

4    revocation of taxicab licenses, and the context further makes it clear that the City Manager was

5    referring to Plaintiff's taxicab license.  The letter clearly states: "[A]s provided for in Section

6    5.35.430(a), your permit to operate a taxicab business in the [C]ity of Santa Clara is hereby

7    revoked."  Sparacino Decl. Ex. E.  Plaintiff fails to articulate how the City Manager's apparently

8    inadvertent use of the term "permit" rather than "license" amounted to a violation of his due

9    process rights.

10         Second, Plaintiff argues that the City never actually inspected Plaintiff's taxicabs, as

11   evidenced by the City's failure to produce any records or inspection forms in response to Plaintiff's

12   Request for Production of Documents Set One.  Decl. of Plaintiff Kulwant Lasher in Opp'n to

13   Def.'s Mot. for Summary Judgment ("Plaintiff Decl.") ¶¶ 9, 11, 14.  However, Plaintiff offers no

14   evidence in support of this allegation other than his own declaration, in which he states that "[m]y

15   civil rights were . . . completely violated by the City of Santa Clara and their employees when they

16   never inspected USA Express taxicabs at any time."  Plaintiff Decl. ¶ 9.  Plaintiff's declaration is

17   contradicted by the other evidence in the record, specifically the July 29, 2008 letter sent to

18   Plaintiff, discussing Officer Oto's visit on July 18, 2008 to Plaintiff's place of business to inspect

19   the taxicabs; the September 24, 2008 City Manager's notice of revocation, describing Officer Oto's

20   visit on September 11, 2008 to Plaintiff's place of business to inspect the taxicabs; and the fact that

21   Plaintiff was arrested for and eventually convicted of bribery of a public official that occurred

22   during the September 11, 2008 inspection.

23         To the extent Plaintiff argues that the City's failure to provide him with more detailed

24   documentation of his noncompliance amounted to a due process violation, the Court is not

25   persuaded of any such constitutional requirement.  Plaintiff cites SCMC §§ 5.35.050, 5.35.260, and

26   5.35.270 as requiring written records of periodic safety and mechanical inspections.  *See* Plaintiff

27   Decl. ¶ 12.  The relevant sections of the Code clearly state that it is Plaintiff's responsibility, as the

28   licensee, to have his taxicabs safety inspected annually and to submit certain required

8

1   documentation to the Chief of Police annually as a condition of license renewal.  SCMC §§

2   5.35.060, 5.35.260(a).  Among these requirements is "[a] sworn statement that each vehicle is in

3   safe operating condition, made by either the proprietor of a public garage engaged in auto repair

4   who is licensed by the State of California, or by a mechanic licensed by the State of California and

5   employed by the applicant, who has inspected and examined such vehicles," SCMC § 5.35.050(j),

6   and "[a] completed taxicab inspection form showing that each vehicle has successfully passed the

7   lamp, brake, smog and meter inspections, and the inspection by the Police Department," SCMC §

8   5.35.050(k).  If the taxicab successfully completes the safety inspection, a taxicab safety permit

9   sticker shall be issued and shall be displayed in the taxicab rear window.  SCMC § 5.35.260(a).

10      Although the Code is admittedly ambiguous as to whether the "inspection by the Police

11   Department" required under SCMC § 5.35.050(k) involves an actual mechanical inspection of the

12   vehicles themselves or simply a documentary inspection of whether the licensee has obtained the

13   necessary inspections from a licensed mechanic, it is clearly Plaintiff's responsibility to obtain and

14   to submit the requisite documentation of compliance with safety and mechanical standards.

15   Furthermore, the basis for the City's revocation of Plaintiff's license was not only his failure to

16   maintain ten safety inspected taxicabs, but also his failure to maintain ten permitted drivers.  If it is

17   true, as Plaintiff claims, that the City's finding of noncompliance was arbitrary and without basis,

18   Plaintiff should be able to produce documentation of his compliance with the Code.  It does not

19   appear that Plaintiff produced any such evidence at his administrative appeal hearing, nor has he

20   produced any such evidence to this Court.  Plaintiff's "'uncorroborated and self-serving'

21   testimony" is insufficient to create a genuine issue of material fact in the face of evidence to the

22   contrary.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court

23   has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-

24   serving' testimony." (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).

25      In sum, by the time the administrative appeal process concluded, the City had given

26   Plaintiff sufficient pre and post-deprivations procedures to satisfy any due process concerns.  Prior

27   to the revocation of his license, the City notified Plaintiff of the charges against him, gave him

28   sufficient time to respond, and participated in face to face meetings with him.  After the license

9

United States District Court
For the Northern District of California

1    was revoked, Plaintiff was represented by counsel at his appeal, given an opportunity to rebut the

2    charges against him, and given additional time to gather evidence and to examine the evidence

3    against him.  Viewing this evidence in totality, the Court cannot conclude that the City deprived

4    Plaintiff of the opportunity to be heard at a meaningful time and in a meaningful manner.  *See*

5    *Buckingham*, 603 F.3d at 1084 (finding no violation of procedural due process in case examining

6    the Department of Agriculture revocation of plaintiff's grazing rights, where plaintiff was given

7    similar pre- and post-deprivation opportunities to be heard).

8                        **2.**           **Substantive Due Process**

9       The Constitution's substantive due process guarantee protects an individual from arbitrary

10    government action.  *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).  Substantive

11    due process is violated by "executive abuse of power . . . which shocks the conscience."  *Id.* at 846;

12    *accord Costanich v. Dep't of Soc. and Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010).  "When

13    executive action like a discrete permitting decision is at issue, only 'egregious official conduct can

14    be said to be arbitrary in the constitutional sense': it must amount to an 'abuse of power' lacking

15    any 'reasonable justification in the service of a legitimate governmental objective.'"  *Shanks v.*

16    *Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008) (quoting *Lewis*, 523 U.S. at 846).

17       Plaintiff has put forth no evidence suggesting that the City's decision to revoke Plaintiff's

18    taxicab operating license based on current and longstanding noncompliance with the City Code

19    lacked any reasonable justification.  As previously noted, the City has a legitimate interest in

20    regulating the taxicab industry.  Plaintiff violated the City's rational regulations, and the City

21    adhered to its regulations in providing Plaintiff adequate notice and meaningful opportunities to be

22    heard before permanently revoking his license.  The City's conduct comes nowhere close to

23    shocking the conscience and therefore did not violate Plaintiff's substantive due process rights.

24             **B.**  *Monell* **Liability**

25       Plaintiff has not shown that his constitutional rights were violated, and therefore his claim

26    against the City necessarily fails.  *See Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1021 (9th

27    Cir. 2010) ("Because we hold that there was no underlying constitutional violation, [plaintiffs]

28

Case No.: 5:10-CV-04173-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    cannot maintain a claim for municipal liability."); *see also City of L.A. v. Heller*, 475 U.S. 796, 799

2    (1986) (per curiam).

3        Furthermore, even if Plaintiff had established violation of his due process rights – which he

4    has not – he falls far short of showing that a policy, custom, or practice of the City was the

5    "moving force" behind any such alleged constitutional injury.  *Monell v. Dep't of Soc. Servs. of*

6    *City of New York*, 436 U.S. 658, 694 (1978); *accord Dougherty v. City of Covina*, 654 F.3d 892,

7    900 (9th Cir. 2011).  The Ninth Circuit has made clear that "'liability for improper custom may not

8    be predicated on isolated or sporadic incidents.'"  *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225,

9    1233 (9th Cir. 2011) (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (internal

10   quotation marks and citations omitted)).  Rather, to hold a government entity liable under § 1983, a

11   plaintiff must show that the alleged unconstitutional act results from "(1) an employee acting

12   pursuant to an expressly adopted official policy; (2) an employee acting pursuant to a longstanding

13   practice or custom; or (3) an employee acting as a 'final policymaker.'"  *Delia v. City of Rialto*,

14   621 F.3d 1069, 1081-82 (9th Cir. 2010) (quoting *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir.

15   2003)).

16       Here, Plaintiff has provided no specific evidence to support his allegations of an official

17   City policy or custom of revoking taxicab owners' licenses arbitrarily and without providing due

18   process.  Plaintiff's only submitted evidence on this point is the Police Chief's testimony, during

19   Plaintiff's criminal trial on the bribery charge, that the Police Chief was unsure whether the Police

20   Department routinely uses inspection forms in the taxicab inspection process or not.  *See* Plaintiff's

21   Request for Judicial Notice in Opp'n to Def.'s Mot. for Summary Judgment, ECF No. 45.  This

22   testimony is far from dispositive as to the City's actual policy or practice concerning taxicab

23   inspections.  More importantly, however, and as previously discussed, Plaintiff has not directed the

24   Court to any authority suggesting that the Constitution requires the City to provide the specific

25   level of documentation Plaintiff demands.  The burden under the City Code was on Plaintiff, the

26   licensee, to provide proof of satisfactory safety inspections for at least ten vehicles and proof of ten

27   permitted drivers, and the City provided him with sufficient notice and opportunity to be heard

28   regarding his noncompliance with these requirements.

Case No.: 5:10-CV-04173-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    In summary, Plaintiff has put forth no evidence demonstrating that he has suffered a

2    constitutional violation, much less a constitutional violation resulting from a policy, custom, or

3    practice of the City.  He has therefore failed to create a genuine issue of material fact as to any

4    element of his § 1983 claim against the City.  Defendant's motion for summary judgment is

5    accordingly GRANTED.

6        **C.** ***Heck v. Humphrey* Doctrine**

7    Because Defendant has already established it is entitled to summary judgment based on

8    Plaintiff's failure to establish the City's *Monell* liability, the Court will only briefly address

9    Defendant's argument in the alternative that Plaintiff's claim is barred under *Heck v. Humphrey*,

10    512 U.S. 477 (1994).[5]  In *Heck v. Humphrey*, the Supreme Court held that a § 1983 claim which

11    necessarily calls into question the lawfulness of a plaintiff's criminal conviction or sentence is not

12    cognizable unless the plaintiff can show that the conviction or sentence has been reversed or

13    otherwise invalidated.  *Id.* at 486-87.  Defendant argues that because Plaintiff's arrest on bribery

14    charges was one of the factors cited by the City Manager in revoking Plaintiff's license, "allowing

15    him and his taxicab company to proceed in this § 1983 action would serve to invalidate the bribery

16    conviction and potentially award him civil damages and attorney's fees for his own criminal

17    behavior."  Mot. at 9.  The Court is not persuaded.  In theory, Plaintiff's due process claim could be

18    sustained even assuming the validity of the bribery conviction.  Thus, the *Heck* doctrine is

19    inapplicable to this case and is not proper grounds for granting summary judgment in Defendant's

20    favor.

21        **IV. CONCLUSION**

22

23

24    _____

[5] *Heck* held that,

25        in order to recover damages for . . . harm caused by actions whose unlawfulness
        would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
26        conviction or sentence has been reversed on direct appeal, expunged by executive
        order, declared invalid by a state tribunal authorized to make such determination, or
27        called into question by a federal court's issuance of a writ of habeas corpus . . . .  A
        claim for damages bearing that relationship to a conviction or sentence that has *not*
28        been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87.

Case No.: 5:10-CV-04173-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1       For the reasons discussed above, the Court GRANTS Defendant's motion for summary

2  judgment.  The Clerk shall close the file.

3  **IT IS SO ORDERED.**

4

5  Dated: February 6, 2012

6                                                          LUCY H. KOH
                                                          United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

13